[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The wife, 44, whose birth name is Carson, and the defendant husband, 43, married on June 25, 1977 in Montreal, Canada. The plaintiff has resided in Connecticut over one year prior to commencing this action seeking a dissolution of the parties' marriage and other relief. The plaintiff's continuous residence provides the court with jurisdiction. Two minor children have been born of the marriage, Lauren Estelle d.o.b. April 4, 1986 and Kristie Nelson d.o.b. April 6, 1989. The parties have agreed that they shall have joint legal custody with physical residence with the plaintiff and reasonable visitation by the defendant. The structure of the visitation has not been agreed upon.
At the time of the marriage the plaintiff, a high school graduate, was working as a secretary for Columbia University where the defendant was a student until his graduation in 1979. Her employee benefits were generous and the university also gave a discount on course costs. The defendant was then admitted to Cornell Law School. They moved to Ithaca. The plaintiff found a job with the university which provided flexible hours but not discounts on courses. Her salary was about $9,000. After completing his first year the defendant was employed as an intern in Washington, D.C. The plaintiff remained in Ithaca. After completing his second year the defendant was employed as a paid intern at a New York City law firm. Upon graduation, the defendant was hired by a major New York City law firm where he remained until 1991. It should be noted that the plaintiff underwent an abortion in 1979 in Canada.
The parties moved to Greenwich, Connecticut. Shortly thereafter they purchased their first home on Halpert Drive. The plaintiff continued to work until their first child was born.
The plaintiff determined that his career would be advanced by joining another law firm which he did in 1991 when he was hired by Moses Ginger. The defendant was of counsel when hired. He then became a contract partner with a fixed salary of $175,000. In 1997 his salary has risen to $190,000 when he was made an equity partner causing his salary to drop to $150,000 but with the opportunity to share in the profits. In 1997 he was paid $23,885 as a bonus. In 1998 he has been drawing $15,000 monthly. In addition, he was paid $71,979 as a partner's distribution and expects to receive $2,005 before the end of 1998.
The defendant's long work day commuting daily took its toll on the marriage and the strain was exacerbated by the plaintiff's CT Page 14933 suspicions and the defendant's later admissions of affairs with other women.
The parties purchased their Buxton Lane, Greenwich residence in 1987 for $475,000. The plaintiff values the house at $500,000 fair market value. The defendant values it at $525,000. The court accepts the defendant's valuation. The initial purchase was made possible by $30,000 given by the defendant's parents. There is a mortgage balance of $219,500 and an equity line of credit of $126,500.
The plaintiff returned to part time employment. However, from 1992 to 1997 the plaintiff found it necessary to receive therapy from a psychiatrist. She also imbibed wine on a regular basis which she also discussed in therapy. The plaintiff's sister came in 1993 to stay with plaintiff for emotional support.
In 1995 the defendant joined the Riverside Yacht Club. He and a partner owned a sailboat that they raced. The defendant spent almost every Thursday night as well as Sunday on the boat. The defendant's offer of having plaintiff socialize at the club was a problem since the plaintiff explained drinking alcoholic beverages was a main activity there.
The final collapse of the marriage was when the plaintiff discovered that the defendant was carrying on an affair with a Miss Sanchez. The defendant was asked to leave the marital house in early July, 1997 which he did. The present dissolution action was commenced shortly thereafter.
In addition to the jointly owned marital house, the plaintiff has $33,888 of retirement accounts, a 1992 Ford Explorer plaintiff values at $9000, a 1985 Mazda defendant values at $1200, a Honda scooter plaintiff values at $1000, a CD for $1000, a Charles Schwab account for $1950, and a checking account containing $2037. The defendant lists Michigan acreage at $10,000, a 1978 Sunfish sailboat at $8,500, cash accounts totaling $6472, Lord Abbett mutual fund at $23,152, retirement accounts totaling $205,510, a yacht club bond for $4000, and a rental security deposit of $3300. For liabilities the plaintiff lists home related expenses totaling $6500 and her attorney's bill of $38,000 as of September 25, 1998. The defendant lists as liabilities bank lines of credit and credit cards totaling $52,880 and a student loan balance of $4500. He has unpaid 1997 income taxes of $7270 based on a proposed joint tax return. CT Page 14934 Finally, he too has attorney fees totaling $43,700.
The court finds that the defendant will have the greater opportunity for future acquisition of capital assets and income. He has the greater source of income, greater vocational skills, and a profession. His behavior is also the primary cause of the breakdown of the marriage.
Having reviewed the evidence in light of the statutory criteria, and having considered relevant case law, the court enters the following decree:
Judgment is entered dissolving the marriage on the ground of irretrievable breakdown.
 1. The parties are awarded joint legal custody with physical custody given to the plaintiff and visitation given to the defendant as detailed on Schedule A annexed hereto and incorporated herein.
 2. The defendant shall pay unallocated alimony and child support in the amount of $7,000 monthly. As additional periodic alimony the defendant shall pay 25% of all future bonus or distribution as gross income awarded to him by his law firm exceeding $180,000. Payments shall be made within ten days of receiving same. The maximum obligation for any calendar year shall not exceed $125,000 for any year through and including July 2007. Thereafter the defendant shall pay the sum of $5,000 as monthly periodic alimony. These periodic orders are terminated by the death of either party, the remarriage of the plaintiff, or future court order. The provisions of § 46b-86 apply to these orders. Gross income includes all partner distributions, wages and Form 1099 income from self employment.
 3. The defendant shall provide medical insurance for the minor children. Section 46b-84(d) applies. The parties shall divide equally all deductibles and bill balances.
 4. The defendant shall maintain life insurance on his life, naming each child primary beneficiary of $250,000 death benefit. The defendant shall also obtain life insurance coverage naming the plaintiff as irrevocable beneficiary of $500,000 death benefit on a decreasing annual step-down of $50,000 per year, to be kept in force so long as the CT Page 14935 periodic alimony order exists. Annual proof of premium payment shall be produced by defendant and given to plaintiff.
 5. The defendant's interest in 17 Buxton Lane, Riverside, Connecticut is awarded to the plaintiff "as is" with the plaintiff assuming responsibility for the encumbrances and taxes, holding the defendant harmless and indemnified. If the defendant does not tender a fully executed quit-claim deed within 30 days the transfer may be completed pursuant to statute.
 6. The contents of the Buxton Lane home are awarded to the plaintiff as her sole property.
 7. The plaintiff is awarded the defendant's Prudential Securities retirement account valued by defendant as $54,156 as of August 31, 1998 (defendant's financial affidavit dated September 17, 1998).
 8. The plaintiff shall be solely responsible for the liabilities listed on her financial affidavit dated September 29, 1998.
 9. The plaintiff shall retain the remaining assets standing in her name as her sole property.
 10. The defendant shall retain the remaining assets not distributed above and standing in his name as his sole property.
 11. The defendant shall be solely responsible for the liabilities listed on his financial affidavit dated September 17, 1998 including the credit cards earmarked (J).
12. No allowance to prosecute is awarded.
 13. The defendant shall cooperate with the plaintiff securing her medical coverage via COBRA if she so elects which will be at her own expense.
 14. The court must and hereby does enter a wage withholding order for the periodic unallocated order.
CT Page 14936 Counsel for the plaintiff shall prepare the judgment file.
 Schedule A
1. During the summer school vacation, the defendant shall have visitation every other weekend commencing on Friday from between 6:00 p.m. and 7:30 p.m. (or such earlier time to be arranged between the parties) until the following Monday at 7:30 a.m. where he will drop the minor children off at the plaintiff's home.
2. During the school year, the defendant shall have visitation every other weekend commencing on Friday from between 6:00 p.m. and 7:30 p.m. (or such earlier time to be arranged between the parties) until Sunday from between 6:30 and 7:30 p.m
3. Weekdays, the defendant may take the children for dinner twice during the week provided he provide the plaintiff with at least 24 hours notice.
4. Telephone access, the defendant may call the children each evening from between 2:30 p.m. and 8:00 p.m. (the children's bedtime). If the children are home at that time, they are to speak to the defendant.
5. Vacation, the defendant shall have a consecutive two week vacation with the children during the summer, provided that he give the plaintiff written notice two (2) months advance prior to such vacation, so that she too may make summer vacation plans in a timely manner.
6. Holiday visitation, shall be as follows:
 a. Monday holidays, the parent who has the children the weekend immediately preceding a Monday holiday shall in addition to the weekend have the children for that Monday holiday;
 b. Mother's Day and Father's Day, the plaintiff shall be entitled to have the children on Mother's Day regardless of whether it is the defendant's visitation weekend and the defendant shall be entitled to have the children on Father's day regardless of whether it is the plaintiff's weekend. CT Page 14937
 c. Mother's Birthday and Father's Birthday, each party shall be entitled to spend time on their respective birthdays with the minor children.
 d. Children's Birthdays, the defendant shall have the children for their birthdays in even years and the plaintiff shall have the children on their birthdays in odd years;
 e. Thanksgiving, Thanksgiving shall commence from Wednesday between 6:00 p.m. and 7:00 p.m. (or such time previously agreed to by parties with appropriate notice) until Sunday from between 6:30 p.m. and 7:30 p.m. The defendant shall have the children for Thanksgiving in even years and with the Plaintiff shall have the children for Thanksgiving in odd years;
 f. Christmas Break: Mother odd years, Father even years: 12/24 at 6:00 p.m. to 12/25 at 10:00 a.m. and 12/29 at 10:00 a.m. until 8:00 p.m. on the day before school begins and Mother even years, Father odd years: 12/25 10:00 a.m. to 12/29 10:00 a.m.
 g. Easter, the defendant shall have the children for Easter in odd years and the plaintiff shall have the children for Easter in even years;
7. School vacations, apart from the foregoing, the parties shall alternate the winter and spring school recesses. Winter recess will be with the defendant in even years and shall be with the plaintiff in odd years. Spring recess shall be with the defendant in odd years and shall be with the plaintiff in even years. The party who has the children for a school vacation shall be entitled to take the children away for the entire vacation period.
8. In addition to the visitation schedule described above, the defendant and the plaintiff shall have visitations with the children as such other times as the parties may mutually agree.
9. If during the defendant's visitation, the defendant is not be available to be with the minor children for a period of two (2) hours or more, he shall first give the plaintiff the option of being with the minor children during that period of time. CT Page 14938
10. The parties shall each be responsible for making arrangements as to the appropriate pick-up, and drop-off times when not specified under this agreement.
HARRIGAN, J.